UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                      )
                                            )
    GREGORY E. DEGROSSEILLIERS      )    Case No. 08-10942-SSM
    DENISE I. DEGROSSEILLIERS       )    Chapter 13
                                            )
        Debtors                     )

**MEMORANDUM OPINION**

A hearing was held on June 25, 2008, on the objection of Gerald M. O'Donnell, standing chapter 13 trustee, to confirmation of a plan filed by the debtors on May 12, 2008. Although the debtors' schedules reflect monthly surplus income of $3,132 per month, their plan—which projects a dividend to unsecured creditors of a modest 49 cents on the dollar— proposes to pay the trustee only $1,774 a month. The trustee objects that the plan cannot be confirmed because the debtors are not devoting their projected disposable income to payment of unsecured claims.

After considering the evidence and arguments presented, the court ruled from the bench that for the purpose of calculating projected disposable income under the "means test" applicable to above-median income debtors, the debtors were permitted to deduct payments becoming contractually due on two mortgage loans secured by a house that the debtors proposed to surrender. On that basis, the court ruled that the trustee's objection would be overruled and the plan confirmed. Because it seemed likely the ruling would be appealed, the court stated that a written opinion would be issued. In reviewing the matter further following the hearing, the court, while adhering to its ruling concerning the deduction for the mortgage payments, has

1

determined that the plan nevertheless does not satisfy the statutory test. Accordingly, the court, contrary to its bench ruling, will deny confirmation.

## Background

Gregory E. Degrosseilliers and Denise I. Degrosseilliers ("the debtors") are husband and wife. They filed a joint voluntary petition in this court on February 29, 2008, for adjustment of their debts under chapter 13 of the Bankruptcy Code. On their schedules, they listed $277,521 in secured debt, $3,544 in priority tax debt, and $124,792 in unsecured debt. They reported a combined gross monthly income of $13,069, net monthly income of $8,948, and monthly expenses of $5,816. The deductions from their paychecks include $1,087 per month to repay loans from their 401(k) retirement savings accounts. On their Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income they reported their current monthly income on an annualized basis to be $156,828 (compared with a state-wide median of $80,646 for a family of the same size). They calculated their monthly disposable income to be $2,732 before inclusion of a further $1,087 deduction for repayment of the 401(k) loan,[1] giving an adjusted monthly disposable income of $1,645. The deductions from current monthly income included $2,748 per month for contractual payments that would become due after the date of the filing of the petition on two mortgages against real estate the debtors owned in Maine.[2]

---

[1] Debtor's counsel mistakenly thought that no place was provided on the Form 22C for deduction of the loan repayment and thus did not show the additional deduction on the form itself.

[2] A summary of the debtors' Form 22C calculations is attached as an exhibit to this opinion. The court has included the 401(k) loan repayment in its proper position.

After the trustee objected to the initial plan filed by the debtors, they filed the modified plan that is before the court on May 12, 2008.[3] It requires the debtors to pay the trustee $2,791.98 per month for 2 months, followed by $1,774.49 per month for 58 months. From the payments received, the trustee would be paid his statutory 10% commission and would pay $1,500 in fees to the debtors' attorney, priority taxes in the estimated amount of $3,544, and a secured automobile loan in the amount of $6,440.[4] The remaining funds would be paid pro rata to unsecured creditors, with the estimated distribution being 49 cents on the dollar. Relevant to the present objection, the plan also provides that the debtors would surrender the Maine real estate, with any deficiency following liquidation of the collateral to be treated as an unsecured claim.[5]

---

[3] Ironically, the initial plan proposed payments of $2,791.98 per month for 60 months and projected a dividend to unsecured creditors of 79 cents on the dollar. The trustee objected to that plan, as he has this plan, on the ground that the debtors were not devoting their disposable income to the payment of unsecured claims. The debtors responded by filing the present plan which *reduces* the payments to $1,774 per month.

[4] This figure is taken from the plan, but is not without its difficulties. The plan values the automobile at $6,440.00, but proposes to pay the secured claim with 0% interest in 15 monthly installments of $379.27, which would actually come to $5,689.05. The actual proof of claim filed by the creditor asserts a secured claim of $4,754.71. Although this is less than the amount stated in the plan, the debtors have nevertheless offered no legal authority for paying 0% interest on the claim in light of controlling Supreme Court authority that would require an interest rate of 1 to 3 percentage points over prime. *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

[5] The debtors did not oppose a motion by the holder of the first mortgage for relief from the automatic stay in order to foreclose on the property, and an order granting the motion was entered on April 14, 2008.

Discussion

The purpose of chapter 13 is to allow a financially-distressed debtor to repay his or her creditors over a three to five-year period under court protection and court supervision.  Priority claims must be paid in full, as must secured claims if the debtor intends to keep the collateral.  However, unsecured claims may be paid at less than 100 cents on the dollar provided (1) the plan is proposed in good faith, (2) unsecured creditors are receiving at least as much as they would receive in a chapter 7 liquidation, and (3) the debtors are devoting their projected disposable income to the plan over the applicable three or five-year commitment period.  § 1325(a)(3), (a)(4), and (b)(1), Bankruptcy Code.

The disposable income test for chapter 13 plans has existed since 1984.  Until enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 ("BAPCPA"), it simply required that a chapter 13 debtor whose plan did not pay claims in full devote his or her "projected disposable income" to the plan for 36 months.  § 1325(b), Bankruptcy Code.  Prior to the enactment of BAPCPA, the enforcement of this requirement traditionally centered on an analysis of the schedules of monthly income and expenses (Schedules I and J) filed by the debtor, with the court making adjustments where the amounts shown were not substantiated or, in the case of expenses, were determined to be unreasonable, unnecessary or excessive.  Such judgments were often, to say the least, highly subjective, with the result that expenses that might be allowed in one court, or by one judge of a particular court, might be disallowed by another.

BAPCPA did not change this paradigm for debtors whose household income was less than the state-wide median income for a household of the same size.  For above-median income

debtors, however, two significant changes were made.  First, the period the debtor was required to pay his or her projected disposable income into the plan ("the commitment period") was increased from 36 months to 60 months, unless claims could be paid in full in a shorter period. § 1325(b)(4)(A)(ii), Bankruptcy Code.  Second, disposable income was to be calculated using the "means test" methodology implemented by BAPCPA for determining whether a chapter 7 filing was presumed to be an abuse.  § 1325(b)(3), Bankruptcy Code.  This computation begins with "current monthly income," which is an arithmetic average of the income (with certain exclusions, such as social security benefits) received in the six months prior to the filing of the bankruptcy petition.  § 101(10A), Bankruptcy Code.  Deducted from this are the allowances for food, clothing, housing, transportation, health care, and other living expenses specified in the Internal Revenue Service collection standards as well as certain additional deductions, including the average monthly payment "contractually due" on secured debts over the 60 months following the date of the petition. § 707(b)(2)(A)(i)-(iv), Bankruptcy Code.

Courts in other districts have sharply divided on the question of whether a deduction from current monthly income can be taken under the means test for contractual payments due on debt secured by collateral that the debtor intends to surrender.[6]  Recently, another judge in this

---

[6] Examples of cases allowing the deduction are *Fokkena v. Hartwick,* 373 B.R. 645, 655 (D. Minn. 2007)*; In re Lindstrom,* 381 B.R. 303, 305 (Bankr. D. Colo. 2007)*; In re Benedetti,* 372 B.R. 90, 95 (Bankr. S.D. Fla. 2007); *In re Mundy,* 363 B.R. 407, 412-13 (Bankr. M.D. Pa. 2007); *In re Haman*, 366 B.R. 307, 316-18 (Bankr. D. Del. 2007).  Examples of contrary rulings are *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006); *In re Harris*, 353 B.R. 304, 309-10 (Bankr. E.D. Okla. 2006); *In re Ray*, 362 B.R. 680, 684 (Bankr. D. S.C. 2007); *In re Love* 350 B.R. 611, 615 (Bankr. M.D. Ala. 2006); *In re Burden*, 380 B.R. 194, 200 (Bankr. W.D. Mo. 2007); *In re Coleman*, 382 B.R. 759, 763 (Bankr. W.D. Ark. 2008); *In re McPherson*, 350 B.R. 38, 47 (Bankr. W.D. Va. 2006).  Because of differences between the way subsections (I) and (II) of § 707(b)(2)(A)(iii) are written, a strong argument can be made that, even if the contractual

(continued...)

district, in a careful and well-reasoned opinion, has held that the deduction is allowed. *In re Virginia Ann Hoskings*, No. 07-13785-RGM (May 29, 2008) (Mayer, J.), Memorandum Op. at 9-13 (adopting analysis of *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007)). This court finds the analysis in *Hoskings* persuasive with respect to the calculation of projected disposable income and will follow it.[7]

---

[6](...continued)
payments can be deducted, the additional deduction for payments to cure arrears would not be allowed in a surrender context, since it is specifically limited to payments "necessary . . . *to maintain possession* of the debtor's primary residence, motor vehicle, or other property *necessary for the support* of the debtor and the debtor's dependents." (emphasis added). Additionally, at least one court, drawing a distinction between what is "contractually due" in the two chapters, has held that the deduction is allowed in the chapter 7 context but not in the chapter 13 context. *See In re Van Bodegom Smith*, 383 B.R. 441 (Bankr. E. D. Wis. 2008).

[7] Because the trustee's objection raised only a disposable income issue, the court need not address whether the requirement of § 1325(a)(3) that the plan be proposed in good faith might bar confirmation even though the disposable income test is technically satisfied. Judge Mayer has held in a reported decision that "[i]f the sole objection to the debtor's good faith is that the debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement. He has done everything Congress has asked him to do." *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007). In a pre-BAPCPA case, however, the Fourth Circuit treated compliance with the disposable income test and compliance with the good faith requirement as separate. *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128 (4th Cir. 1995). In *Solomon*, the Court held that "disposable income" for the purpose of § 1325(b) does not include imputed income from exempt IRA's where the debtor, although eligible to withdraw without penalty, was not actually doing so. However, the Court remanded for a determination of whether the plan had been proposed in good faith. *See Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982) (adopting totality of the circumstances test for bad faith where chapter 13 plan proposes no or only minimal payment of claims). Accordingly—at least where a plan proposes no or only minimal payment of unsecured claims—I assume that confirmation may be denied on good faith grounds even though the debtor technically complies with the means test, just as a chapter 7 case may be dismissed for abuse based on the totality of the circumstances even though the means test is satisfied. § 707(b)(3), Bankruptcy Code. However, since the trustee did not specifically object on good faith grounds, the court need not reach that issue.

There remains, however, a problem. The disposable income test requires that a debtor's projected disposable income over the applicable commitment period "be applied to make payments to *unsecured creditors* under the plan." § 1325(b)(1)(B), Bankruptcy Code. Thus, where a plan also pays secured and priority claims, it is not sufficient that the *plan payment* equals projected disposable income. Secured and priority debts (including the chapter 13 trustee's fee) are already accounted for in the disposable income calculation. Accordingly, the payments into the plan must equal at least the debtor's disposable income over the commitment period *plus* the amounts needed to pay secured and priority debts under the plan. The plan in this case fails to do so. The proposed payments into the plan total $108,504  The trustee's commission would be $10,850, the amount needed to pay the priority tax claims is $3,544, and the amount needed to pay the secured automobile debt is at least $4,755.[8] Thus, the amount available for payment of unsecured claims is $89,355.[9] Even accepting the debtors' disposable income calculation of $1,645, the amount that must be applied to make payments to unsecured creditors is 60 times that amount, or $98,700. Since the actual payment to unsecured creditors is $9,345 less than the required amount, the disposable income test is not satisfied, and the plan cannot be confirmed.

A separate order will be entered denying confirmation with leave to file a modified plan.

---

[8] The amount for the automobile loan assumes that the trustee would pay the filed claim without interest. But see footnote 4.

[9] For the purpose of this ruling, I am assuming, without deciding, that the attorneys fees being paid through the plan may be treated as part of the payments to unsecured creditors rather than being subsumed in the means test allowance for "the actual administrative expenses of administering a chapter 13 plan."

Date: _____           _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge


Copies to:

Gregory E. Degrosseilliers
Denise I. Degrosseilliers
6 Redbud Circle
Stafford, VA 22554
Debtors

Gregory M. Van Doren, Esq
9119 Church Street
Manassas, VA 20110
Counsel for the debtors

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

**Degrosseilliers Means Test Computation**

**Current Monthly Income**

| | |
|---|---|
| Husband's gross income | $ 7,569.00 |
| Wife's gross income | $ 5,500.00 |
| Total | $ 13,069.00 |
| | |
| Annualized Income | $ 156,828.00 |
| Median income for family of 4 | $ 80,646.00 |

**Deductions**

| | |
|---|---|
| Nat'l standard: food, apparel, services, etc | $ 1,331.00 |
| Nat'l standard: health care | $ 216.00 |
| Local standard: housing and utilities | $ 476.00 |
| Local standard: mortgage/rent | $ - |
| Local standard: vehicle operation (2 veh) | $ 416.00 |
| Local standard: vehicle ownership (veh #1) | $ 391.85 |
| Local standard: vehicle ownership (veh #2) | $ 478.00 |
| Other: taxes | $ 3,034.19 |
| Other: mandatory payroll deductions | $ 61.00 |
| Other: life insurance | $ 31.00 |
| Other: telecommunication service | $ 140.00 |
| Health ins, disability ins, and H S A | $ 520.98 |
| Education expenses | $ 137.50 |
| Charitable contributions | $ 210.00 |
| Payments due: secured auto loan | $ 86.15 |
| Payments due: 1st mortgage (house in ME) | $ 2,270.00 |
| Payments due: 2nd mortgage (house in ME) | $ 478.28 |
| Prepetition priority claims | $ 59.07 |
| 401(k) loan repayment | $ 1,087.00 |
| Chap 13 admin expense (at 8%) | $ - |
| Total deductions | $ 11,424.02 |
| | |
| Disposable Income | $ 1,644.98 |